United States Court of Appeals,

Fifth Circuit.

No. 91–5025

Summary Calendar.

Ayo MARTINS, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Sept. 23, 1992.

Petition for Review of an Order of the Immigration and Naturalization Services.

Before KING, EMILIO M. GARZA and DEMOSS, Circuit Judges.

PER CURIAM:

Petitioner seeks review of a deportation order entered by the Board of Immigration Appeals. Our authority to review final orders of deportation lies in section 106(a) of the Immigration and Nationality Act, 8 U.S.C. 1105a(a).

## I. BACKGROUND

Ayo Martins ("Martins"), a native and citizen of Nigeria, entered the United States in 1981 on a student visa. He is married to a U.S. citizen and has two U.S. citizen children. In April 1986, Martins was convicted of conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), and 846. He was sentenced to 15 years incarceration and three years special parole. While Martins was serving his sentence, the Immigration and Naturalization Service ("INS") served him with an Order to Show Cause why he should not be deported, based upon his convictions, as provided in 8 U.S.C. § 1251(a)(11).[1]

_____

[1]This section, as amended, states that an alien is deportable if he is "convicted of an aggravated felony at any time after entry ...". 8 U.S.C. § 1251(a)(2)(A)(iii). The offense for which Martins was convicted is considered an aggravated felony. See 8 U.S.C. § 1101(a)(43) and 18 U.S.C. § 924(c)(2).

At his deportation hearing, Martins conceded his deportability, as charged by the INS, admitting that he was convicted for the above-described offenses. Martins then requested a continuance and advised the Immigration Judge ("IJ") that he would be submitting an application for political asylum. The IJ expressed doubt that Martins was eligible to obtain asylum as an alien convicted of a "particularly serious crime". Under the INS regulations concerning asylum, an alien convicted of a particularly serious crime is held to be a danger to the community and cannot apply for asylum.[2]

The IJ accepted Martins' asylum application for identification purposes only, and ordered the parties to brief the issue of whether a person convicted of a particularly serious crime can apply for and receive asylum. The IJ noted that neither party briefed this precise issue. The INS argued that under 8 U.S.C. § 1158(d), aliens convicted of aggravated felonies[3] are precluded from applying for or obtaining asylum. Martins argued that he would experience extreme hardship if deported to Nigeria because he would be subject to criminal prosecution in that country. Without reaching whether the convictions were "aggravated felonies" under the new statute, the IJ found that Martins was convicted of at least one "particularly serious crime"[4] and that this, in and of itself, was sufficient to pretermit Martins' application under 8 C.F.R. § 208.14(c).[5]

---

[2]*See,* Procedures for Asylum and Withholding of Deportation, 8 C.F.R. § 208.14 which states:

> (c) Mandatory Denials. An application for asylum shall be denied if:

> (1) The alien, having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community.

[3]*See,* 8 U.S.C. § 1101(a)(43), which defines an aggravated felony as including, "... any illicit trafficking in any controlled substance (as defined in section 102 of the Controlled Substances Act), including any drug trafficking crime as defined in section 924(c)(2) of title 18 United States Code, ..."; and 18 U.S.C. § 924(c)(2), which defines drug trafficking crimes as, "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.) ..."

[4]The IJ noted that possession with intent to distribute heroin was found to be a "particularly serious crime" in *Matter of Gonzalez,* 19 I & N Dec. 682 (BIA 1988).

[5]The IJ stated "Because of his criminal record and the finding of deportability pursuant to Section 241(a)(11) of the I & N Act, he is not eligible for suspension, adjustment, asylum, withholding, or even the minimal discretionary consideration of voluntary departure."

The Board of Immigration Appeals ("BIA") affirmed the IJ's ruling, finding that Martins' application for asylum and withholding of deportation[6] must be denied. The BIA based its holding on the language of 8 U.S.C. § 1253(h)(2), which provides, in pertinent part, that the withholding of deportation provision shall not apply if an alien, "having been convicted by final judgment of a particularly serious crime, constitutes a danger to the community of the United States." The BIA further noted that the new asylum regulations applied to all applications for asylum or withholding of deportation that are filed on or after October 1, 1990. Since Martins' application for asylum was filed on March 7, 1991, it was properly denied under 8 C.F.R. § 208.14.

Martins now contends that the IJ and the BIA erred in not allowing him to apply for asylum and withholding of deportation. Martins also contends that the BIA's interpretation of relevant statutes is unconstitutional.

## II. DISCUSSION

A. The Application for Asylum

First, Martins argues that he was improperly precluded from applying for asylum because the IJ and the BIA misinterpreted 8 C.F.R. § 208.14 on mandatory denials of asylum. Their interpretation will be upheld if it is reasonable and not contrary to congressional intent. *Martinez–Montoya v. I.N.S.,* 904 F.2d 1018, 1021 (5th Cir.1990), citing *Martin v. Kilgore First Bancorp.,* 747 F.2d 1024 (5th Cir.1984).

Martins' argument is without merit because Martins is statutorily ineligible to apply for asylum under 8 U.S.C. § 1158(d). Subsection (d) to § 1158 was added by the 1990 Immigration Act and states that "an alien who has been convicted of an aggravated felony, ..., may not apply for or be granted asylum." The term "aggravated felony" was first defined in the Anti–Drug Abuse Act of

---

[6]Under 8 C.F.R. § 208.3(b), any application for asylum will automatically constitute as an application for withholding of deportation.

1988 ("ADAA") codified as amended at 8 U.S.C. § 1101(a)(43) and includes any "drug trafficking crime", as defined in 18 U.S.C. § 924.[7] Martins' heroin convictions are within the definition of "drug trafficking crime". Therefore, Martins' conviction constitutes an aggravated felony under the ADAA definition.

Martins next contends that he is not an aggravated felon because he was convicted in 1986 and the aggravated felony provision was adopted as part of the ADAA in 1988. We must now decide whether section 1158(d) precludes an alien from applying for asylum if the alien has been convicted of an aggravated felony prior to the effective date of the ADAA. This court has already addressed this issue, in a different context, in *Ignacio v. I.N.S.,* 955 F.2d 295 (5th Cir.1992) (en banc). In *Ignacio,* an alien was seeking to avoid the consequences of an Immigration Act provision, barring aggravated felons from invoking an automatic stay of deportation, because his conviction was prior to the ADAA. *Id.* at 297. In *Ignacio,* the court noted that the 1990 Immigration Act did not address the "substantive retroactivity question—when the [aggravated felony] conviction must have occurred." *Id.* at 298, quoting *Ayala–Chavez v. I.N.S.,* 945 F.2d 288, 291 n. 5 (9th Cir.1991). The *Ignacio* court found that Congress answered this question in its 1991 Technical Amendments to the Immigration Act, which state that the 1990 amendments "apply to convictions entered before, on, or after [the effective] date." Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (Technical Amendments), Pub.L. No. 102–232, 105 Stat. 1733, § 306(a)(11) (1991). Like the *Ignacio* court, we conclude that Congress inserted the "on, before, or after"[8] language, into § 1158(d), in order to bar from asylum those aliens whose convictions fall under the definition of "aggravated felony", regardless of the date of those convictions. *Id.* at 298. We hold that Martins is an "aggravated felon" under § 1158(d), and the BIA did not err in finding Martins ineligible to apply for asylum.

---

[7]A drug trafficking crime is defined in 18 U.S.C. § 924(c)(2) to include: "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.) ..."

[8]*See,* Technical Amendments, Pub.L. No. 102–232, 105 Stat. 1733, § 306(a)(13) (1991).

B. The Application for Withholding of Deportation

Martins alleges that the BIA erred in not allowing him to apply for a withholding of deportation under 8 U.S.C. § 1253(h)(2) for two reasons: first because the INS did not show that his crime was particularly serious and second, because there was no separate findings to show that he was a danger to the community.[9]

Martins contends that the IJ must examine the underlying facts and circumstances of the conviction to determine if the crime is particularly serious. Section 1253(h)(2) was amended by the 1990 Immigration Act to provide that "an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime." Immigration Act of 1990, Pub.L. No. 101–649 § 515(a)(2), 104 Stat. 4978, 5053 (1990). This amendment also applies to convictions for aggravated felonies entered "before, on or after" the date of the act (November 29, 1990). *Id.* Therefore, Martins' aggravated felony conviction constitutes a conviction for a particularly serious crime, as defined in the statute.

Martins' second contention is that under the wording of 8 U.S.C. § 1253(h)(2)(B), the INS is required to show that an alien has both committed a particularly serious crime and is a danger to the community. This Circuit has not yet confronted this question. However, both the Ninth and Eleventh Circuits have ruled that the statute does not require this dual showing.[10]

The Eleventh Circuit based its decision on Congressional intent and the plain language of the statute. The statute "does not connect its two clauses with a conjunction, rather the statute set[s] forth a cause and effect relationship: the fact that the alien has committed a particularly serious crime

---

[9]*See,* 8 U.S.C. § 1253(h)(2), which states that a withholding of deportation "shall not apply to any alien if the Attorney General determines that ... B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States."

[10]For a contrary opinion, *See,* William M. Audet, "Representing the Institutionalized Mariel Cubans—The Wisconsin Experience", 1987 Wisc.L.Rev. 455, 482–3 (1987).

makes the alien dangerous within the meaning of the statute." *Arauz v. Rivkind,* 845 F.2d 271 (11th Cir.1988), citing *Crespo–Gomez v. Richard,* 780 F.2d 932 (11th Cir.1986); *see also, Zardui–Quintana v. Richard,* 768 F.2d 1213, 1222 (11th Cir.1985) (Vance, J., concurring in result). Therefore, the Eleventh Circuit holds that "the only finding required by section 1253(h)(2)(B) is that the alien has been convicted of a "particularly serious crime'." *Arauz,* 845 F.2d at 275, citing *Crespo–Gomez,* 780 F.2d at 934–35. Furthermore, the *Arauz* court said that since the "narcotics conviction was in the record, the Immigration Judge did not have to consider additional information concerning Arauz's request for deportation, because no amount of evidence would have negated the fact of Arauz's statutory ineligibility for withholding of deportation." *Arauz,* 845 F.2d at 275.

In connection with the wording of § 1253(h)(2)(B), the Ninth Circuit has stated, "the participle phrase "having been convicted by a final judgment of a particularly serious crime,' modifies the word "alien' and thus limits those aliens who may be determined to be a danger to those who have been finally convicted of serious crimes." *Ramirez–Ramos v. I.N.S.,* 814 F.2d 1394, 1397 (9th Cir.1987). The court also holds that the statute only requires "the factual finding of conviction of a particularly serious crime to support the determination of danger to the community." *Id.*

Martins bases his contention on two factors first, on the intent of Congress and second, on principles of grammar. Martins' congressional intent argument is based on a letter to the INS from Senator Edward Kennedy, Chairman of the Senate Subcommittee on Immigration and Refugee Affairs. The letter suggests that Congress intended to require the INS to make a dual showing of a conviction for an aggravated felony and a danger to the community. However, this interpretation is in direct conflict with the legislative history accompanying the Refugee Act.[11] The House Judiciary Committee Report clearly states that the act intended to make those aliens, "who have been convicted of a particularly serious crime which makes them a danger to the community", ineligible for a

---

[11]The Refugee Act of 1980 amended § 1253(h) to incorporate § 1253(h)(2)(b) in order to conform to the standards of the United Nations. *See, Zardui–Quintana,* 768 F.2d at 1222 (Vance, J., concurring in result).

withholding of deportation. H.R.Rep. No. 608, 96th Cong., 1st Sess. 18 (1979), cited in *Zardui–Quintana,* 768 F.2d at 1222 (Vance, J., concurring in result). Although the Senate version of the Refugee Act was passed, the final version incorporated the House provisions on Asylum and Withholding of Deportation. *Zardui–Quintana,* 768 F.2d at 1222 (Vance, J., concurring in result), citing S.Conf.Rep., No. 590, 96th Cong., 2d Sess. 20 (1980), U.S.Code Cong. & Admin.News 1980, p. 141.

In his concurring opinion in *Zardui–Quintana,* Judge Vance discusses the practical problems which would result from a dual findings requirement. "A separate determination of an alien's potential dangerousness would require a prediction as to an alien's potential for recidivism and would lead to extensive, drawn-out hearings complete with psychological evaluations and expert testimony. *Zardui–Quintana,* 768 F.2d at 1222–23 (Vance J., concurring in result). The fact that Congress did not address these potential problems indicates that it did not intend to burden the INS with these complexities. *Id.* at 1223.

Martins also argues that basic principles of grammar dictate that participle modifiers set off by commas are not essential to the principal thought of the sentence and therefore, the wording of section 1253(h)(2)(B) requires a separate showing of a danger to the community. However, even accepting this principle arguendo, it does not further Martins' claim. The statute requires a showing of a danger to the community, and Congress clearly intended that a conviction of a particularly serious crime is sufficient to show a danger to the community. *See, Zardui–Quintana,* 768 F.2d at 1222, and *Ramirez–Ramos,* 814 F.2d at 1397.

In summary, based on the rationale of these prior decisions and the intent of Congress, we now join the Ninth and Eleventh Circuits in holding that 8 U.S.C. § 1253(h)(2)(B) requires only a showing that the defendant was convicted of a particularly serious crime. We hold, therefore, that the BIA's decision to deny the withholding of deportation is supported by substantial evidence.

*Zamora–Morel v. I.N.S.,* 905 F.2d 833, 838 (5th Cir.1990) (review of BIA's conclusion on withholding is subject to "substantial evidence" standard of review).

## C. The Constitutional Issue

Martins' final argument is that the BIA's interpretations of the withholding of deportation and asylum statutes violate the Fifth Amendment principles of Due Process.

Martins correctly states that aliens subject to deportation are entitled to a fair hearing. *Wong Yang Sung v. McGrath,* 339 U.S. 33, 49–50, 70 S.Ct. 445, 454, 94 L.Ed. 616 (1950). However, Martins did receive a hearing on his deportation and was found by an IJ to be deportable. Martins' claim then goes one step further to allege that he was entitled to a "full and fair" hearing not only on deportation, but also on his applications for asylum and withholding. The Eleventh Circuit, while reviewing a denial of a request for withholding of deportation, stated that because the "narcotics conviction was in the record, the immigration judge did not need to consider additional information ... because no amount of evidence would have negated the fact of statutory ineligibility for withholding of deportation." *Arauz,* 845 F.2d at 275. Furthermore, this Court has ruled that "absent statute or regulation requiring a hearing, we see no reason why, and are cited to no authority supporting that, due process is offended if no hearing is granted on an application that on its face must be denied as a matter of law." *Sanchez–Dominguez v. I.N.S.,* 780 F.2d 1203, 1206 (5th Cir.1986) (Aliens were not denied due process when they did not receive hearing on their application for suspension of deportation where their application on its face showed failure to meet threshold requirement of statute).

Martins relies on the *Arauz* case to establish that an application for asylum requires an "individual balancing of all relevant factors". *Arauz* required a hearing on an application of asylum, but the ruling was based on the INS regulations that were in place at that time. *Arauz,* 845 F.2d at 275–76. The Attorney General has since revised the regulations in an attempt "to overcome the line

of decisions, represented by *Arauz*." 53 Fed.Reg. 28232 (1988) (codified at 8 C.F.R. § 208). The regulation now lists conditions for mandatory denials of asylum applications[12] and also expressly state that a hearing is not required for mandatory denials.[13]

We, therefore, cannot agree that an alien would be entitled, under the Due Process principles of the Fifth Amendment, to a hearing on an application, which he is statutorily ineligible to receive.

For the foregoing reasons, the order of the BIA is AFFIRMED.

---

[12]*See,* Procedures for Asylum and Withholding of Deportation, 8 C.F.R. § 208.14(c)(1).

[13]*See,* Exclusion of Aliens, 8 C.F.R. § 236.3(c) which states that "an evidentiary hearing extending beyond issues related to the basis for a mandatory denial of the application pursuant to 8 C.F.R. 208.14 or 208.16 is not necessary once the immigration judge has determined that such a denial is required.