# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 17-60579

————

United States Court of Appeals
Fifth Circuit

**FILED**

September 7, 2017

Lyle W. Cayce
Clerk

CORNELIUS CAMPBELL BURGESS,

Movant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION

Respondent.

————

Motion to Stay Order of Federal Deposit Insurance Corporation's Board of
Directors Pending Final Decision on Petition for Review
Nos. FDIC-14-0307e; FDIC-14-0308k

————

Before JONES, CLEMENT, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Cornelius Campbell Burgess, a director and former officer of Herring Bank (Bank), was investigated by the Federal Deposit Insurance Corporation (FDIC) for improper expense practices and misuse of bank property. An FDIC Administrative Law Judge (ALJ) conducted a hearing and issued recommended findings of fact and conclusions of law. The FDIC Board largely adopted the ALJ's recommendations and issued an order assessing a civil penalty against Burgess and requiring his withdrawal from the banking industry. Burgess sought review in this court and filed the instant motion to stay the FDIC's order while we consider his petition for review. He alleges, among other things, that the ALJ is an inferior "Officer of the United States" who holds his office in violation of the Appointments Clause.[1] For the following reasons, we grant Burgess's motion and stay the FDIC's order pending resolution of the merits of the petition or further order of this court.

# I

A stay pending disposition of a petition for review of an agency action is discretionary, "not a matter of right."[2] To obtain a stay, Burgess must show: "(1) a likelihood of success on the merits; (2) that irreparable harm would occur if a stay is not granted; (3) that the potential harm to the movant outweighs the harm to the opposing party if a stay is not granted; and (4) that granting of the stay would serve the public interest."[3] This standard requires a "strong showing" that Burgess is likely to succeed on the merits of his petition for review,[4] not a "mere possibility of relief."[5]

---

[1] U.S. CONST. art. II, § 2, cl. 2.

[2] *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

[3] *Ignacio v. INS*, 955 F.2d 295, 299 (5th Cir. 1992) (per curiam).

[4] *Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

[5] *Id.* at 434 (internal quotation marks omitted).

## II

The Appointments Clause of the United States Constitution divides federal government personnel into three categories: principal Officers, inferior Officers, and non-Officer employees. Principal Officers must be appointed by the President with "the Advice and Consent of the Senate."[6] Inferior Officers may be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments."[7] Non-Officer employees are "lesser functionaries" in the government, and their appointment is not subject to this Clause.[8]

A government worker is an "Officer of the United States" subject to the Appointments Clause if he or she exercises "significant authority pursuant to the laws of the United States."[9] In *Freytag v. Commissioner of Internal Revenue*, the Supreme Court applied this standard to hold that a Special Trial Judge (STJ) in the United States Tax Court, an Article I court, was an inferior Officer subject to the Clause.[10]

Later, the D.C. Circuit in *Landry v. FDIC*[11] considered whether FDIC ALJs are inferior Officers—the same issue Burgess raises here—and held that they are not.[12] In its rationale, the court read *Freytag* as holding that a government worker must have final decision-making authority to be considered an Officer.[13] That court recently applied its *Landry* rule in *Raymond J. Lucia Companies, Inc. v. SEC*[14] to hold that SEC ALJs are not "inferior Officers" either.[15]

---

[6] *Edmond v. United States*, 520 U.S. 651, 659 (1997) (quoting U.S. CONST. art. II, § 2, cl. 2).

[7] U.S. CONST. art. II, § 2, cl. 2.

[8] *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 880 (1991) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976)).

[9] *Edmond*, 520 U.S. at 662 (quoting *Buckley*, 424 U.S. at 126).

[10] *See* 501 U.S. at 881-82.

[11] 204 F.3d 1125 (D.C. Cir. 2000).

[12] *See id.* at 1132-34.

[13] *See id.* at 1134.

[14] 832 F.3d 277 (D.C. Cir. 2016).

[15] *See id.* at 285-89.

While en banc review of *Lucia* was pending before the D.C. Circuit, the Tenth Circuit, in *Bandimere v. SEC*, [16] rejected the D.C. Circuit's interpretation of *Freytag*. It held that (1) final decision-making authority is not a necessary condition to Officer status; and (2) SEC ALJs are inferior Officers.[17] The D.C. Circuit subsequently denied en banc review in *Lucia* by an equally divided court,[18] and accordingly, a circuit split remains regarding SEC ALJ's. A petition for a writ of certiorari is now pending before the Supreme Court in *Lucia*.[19]

## A

We conclude, based on the Supreme Court's decision in *Freytag*, that Burgess has made a "strong showing" that he is likely to succeed on the merits of his petition for review. In *Freytag*, the Court considered an Appointments Clause challenge to a proceeding in the United States Tax Court over which an STJ appointed by the Chief Judge of the Tax Court had presided.[20] The relevant statute authorized the STJ to decide certain cases, but in others, to "hear the case and prepare proposed findings and an opinion," without issuing a decision.[21] Freytag's proceeding was conducted under the latter provision, and when the Tax Court ruled adversely to him after adopting the proposed findings of the STJ, Freytag argued that the STJ was an inferior Officer within the meaning of the Appointments Clause and had not been appointed in accordance with its requirements.[22] Although the STJ lacked authority to enter a final judgment in Freytag's case, the Court agreed.[23] The Court based

---

[16] 844 F.3d 1168 (10th Cir. 2016).
[17] *See id.* at 1181-85.
[18] *Raymond J. Lucia Cos., Inc. v. SEC*, 2017 WL 2727019 (D.C. Cir. June 26, 2017) (en banc).
[19] Petition for Writ of Certiorari, *Raymond J. Lucia v. SEC* (No. 17-130).
[20] *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 871-73 (1991).
[21] *Id.* at 873 (citing I.R.C. § 7443A(c)).
[22] *Id.* at 877-78.
[23] *Id.* at 881.

its holding on the "significance of the duties and discretion that special trial judges possess."[24] In reaching this conclusion, the Court noted that (1) the position was "established by Law;" (2) its "duties, salary, and means of appointment . . . are specified by statute;" and (3) the officeholder was empowered to "exercise significant discretion" over "important functions."[25] The Court then stated that "[e]ven if the duties of [STJs] . . . were not as significant as we . . . have found them to be," the "independent authority" that STJs exercised when authorized to enter a final judgment in some cases rendered them "inferior Officers" for all purposes.[26]

The Court held that the STJs' significant statutory duties and discretion brought them within the Appointments Clause. The Court's additional statement—that these duties and discretion, coupled with the power to enter final judgments also makes the STJs Officers—was dicta or an alternative basis for its decision. We therefore conclude, contrary to the D.C. Circuit's decision in *Landry*, that final decision-making authority is not a necessary condition for Officer status.[27]

A government worker is therefore an "inferior Officer" subject to the Appointments Clause if his office entails "significan[t] . . . duties and discretion."[28] To decide that issue, this court must consider: (1) whether the office is "established by Law;" (2) whether the "duties, salary, and means of appointment for that office are specified by statute;"[29] and (3) whether the officeholder may "'exercise significant discretion' in 'carrying out . . . important functions.'"[30]

---

[24] *Id.*
[25] *Id.* at 881-82.
[26] *Id.* at 882.
[27] *See id.* at 881-82; *Bandimere v. SEC*, 844 F.3d 1168, 1182-85 (10th Cir. 2016).
[28] *Id.* at 881.
[29] *Id.*
[30] *Bandimere*, 844 F.3d at 1179 (quoting *Freytag*, 501 U.S. at 882).

5

## B

The FDIC ALJ's position is "established by Law" and its "duties, salary, and means of appointment are specified by statute."[31] In *Freytag*, the Court held that the STJ post was established by law because a statute created the office.[32] Here, the Administrative Procedure Act creates the ALJ position,[33] and it describes ALJ functions,[34] pay scale,[35] and applicable hiring practices.[36]

FDIC ALJs also "carry[] out . . . important functions" over which they "exercise significant discretion."[37] The STJs in *Freytag* "[took] testimony, conduct[ed] trials, rule[d] on the admissibility of evidence, and [had] the power to enforce compliance with discovery orders."[38] FDIC ALJs perform all of these functions.[39] Moreover, their broad authority to preside over agency adjudications and issue recommendations closely resembles the authority wielded by United States Commissioners[40]—the forerunners of Magistrate Judges—who the Supreme Court held were Officers.[41] Each of these functions

---

[31] *Freytag*, 501 U.S. at 881.

[32] *See id.* (contrasting STJs with special masters in Article III courts, "whose positions are not established by law").

[33] *See* 5 U.S.C. § 556.

[34] *Id.* § 556-557.

[35] *Id.* § 5372.

[36] *Id.* § 3105.

[37] *Freytag*, 501 U.S. at 882.

[38] *Id.* at 881-82.

[39] *See* 12 C.F.R. § 308.5(b)(3) ("receive relevant evidence"); *id.* § 308.5(a) ("all powers necessary to conduct a proceeding in a fair and impartial manner and to avoid unnecessary delay"); *id.* § 308.5(b)(3) ("rule upon the admission of evidence"); *see also Landry v. FDIC*, 204 F.3d 1125, 1141 (D.C. Cir. 2000) (Randolph, J., concurring) ("There are no relevant differences between the ALJ in [*Landry*] and the special trial judge in *Freytag*."). *But see* 12 C.F.R. § 308.26(c) (ALJ lacks power to enforce subpoena against non-party, but may impose sanctions upon unresponsive subpoenaed non-party).

[40] *Compare* 12 C.F.R. § 308.5, *with Go-Bart v. United States*, 282 U.S. 344, 353 n.2 (1931) (listing powers of United States Commissioners); *see also Butz v. Economou*, 438 U.S. 478, 513-15 (1978) (holding that ALJs are entitled to absolute immunity from suit for damages stemming from official acts because they are "functionally comparable" to judges).

[41] *Go-Bart*, 282 U.S. at 352; *see Rice v. Ames*, 180 U.S. 371, 378 (1901); *Landry*, 204 F.3d at 1143 (Randolph, J., concurring); *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 545 (9th Cir. 1984) (en banc).

entails the exercise of discretion, [42] and they are "more than ministerial tasks."[43] There is nothing in the record to suggest that FDIC ALJs' discretion is curtailed sufficiently to distinguish it from that of the STJs in *Freytag*. The duties of FDIC ALJs are therefore sufficiently "important," and their discretion sufficiently "significant," to render them Officers under *Freytag*.

The FDIC ALJs' lack of final decision-making authority does not defeat Burgess's assertion that they are inferior Officers. We recognize that the Tenth Circuit in *Bandimere* noted a number of SEC ALJ responsibilities pointing towards greater final decision-making authority than FDIC ALJs possess in finding that SEC ALJs are constitutional Officers.[44] However, as discussed above, our understanding of the Supreme Court's decision in *Freytag* is that the lack of final decision-making authority is not dispositive, and the fact that the Tax Court STJ's possessed that authority in some cases was not outcome-determinative.[45]

In the present case, the FDIC reviews ALJ recommendations de novo,[46] just as federal district courts review the reports of Magistrate Judges de novo when a party takes exception.[47] But the Supreme Court concluded in *Freytag* that the Tax Court's standard of review of STJ determinations was "not relevant."[48]

We are not persuaded that the FDIC's power to "perform, direct the performance of, or waive performance of" any ALJ duty renders the ALJs mere

---

[42] *See, e.g.*, 12 C.F.R. § 308.5(b)(7) (ALJ may decide non-dispositive motions).

[43] *Freytag*, 501 U.S. at 881.

[44] *See Bandimere v. SEC*, 844 F.3d 1168, 1180-81 (10th Cir. 2016) (noting SEC ALJs' power to rule on dispositive motions, the SEC's deference to their credibility determinations, and the power to enter initial decisions that could ripen to a final decision); *see also id.* at 1180 n.25 ("SEC ALJs exercise significant authority in part because their initial decisions can and do become final without plenary agency review.").

[45] *See Freytag*, 501 U.S. at 881-82; *Bandimere*, 844 F.3d at 1182-85.

[46] *See* 12 C.F.R. § 308.40; *Landry*, 204 F.3d at 1133 (majority opinion).

[47] 28 U.S.C. § 636(b)(1).

[48] *Freytag*, 501 U.S. at 874 n.3; *see Landry*, 204 F.3d at 1142 (Randolph, J., concurring).

7

employees.[49] As the Supreme Court stated in *Edmond*, inferior Officers' work is often "directed and supervised at some level" by a superior,[50] making this issue more relevant to the distinction between principal and inferior Officers than to the distinction between Officers and employees.[51] An FDIC ALJ has the broad authority to admit or exclude evidence, permit discovery and shape the course and scope of a contested hearing. Accordingly, the absence of final decision-making authority does not sufficiently undermine FDIC ALJs' "significant authority"[52] such that they are employees, rather than Officers.

## III

Burgess must also show that irreparable harm would occur if a stay is denied, that the potential harm to him if the stay is not granted outweighs any harm to the FDIC if the stay were granted, and that granting a stay would serve the public interest.[53] Burgess has made this showing.

"[A]n 'injury is "irreparable" only if it cannot be undone through monetary remedies.'"[54] Accordingly, reputational injury and lost wages do not necessarily constitute irreparable harm.[55] Without an emergency stay, Burgess must withdraw from the banking industry on September 8, 2017. Burgess alleges that the reputational harm of the sanctions in addition to "the concomitant destruction of his career in his chosen profession of banking, constitutes irreparable injury."[56] In *Valley v. Rapides Parish School Board*,[57] a decision pursuant to a constitutionally infirm hearing that injured

---

[49] 12 C.F.R. § 308.4.
[50] *Edmond v. United States*, 520 U.S. 651, 663 (1997).
[51] *See id.* at 665.
[52] *Id.* at 662 (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)).
[53] *Ignacio v. I.N.S.*, 955 F.2d 295, 299 (5th Cir. 1992) (per curiam); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Vidal v. Gonzlaes*, 491 F.3d 250, 254 n.17 (5th Cir. 2007).
[54] *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981).
[55] *See Sampson v. Murray*, 415 U.S. 61, 89-92 (1974).
[56] *[Anonymous] v. FDIC*, 617 F. Supp. 509, 516 (D.D.C. 1985).
[57] 118 F.3d 1047 (5th Cir. 1997).

petitioner's "reputation and . . . ability to procure comparable employment" was "sufficient to satisfy irreparable injury."[58]  Here, Burgess has established a likelihood of success on the merits of his challenge to the constitutionality of the FDIC's adjudication and will be left unable to find employment in the banking industry so long as the FDIC's order remains in place.  Burgess has therefore established an irreparable injury.

For similar reasons, the balance of hardships favors issuing a stay.  Burgess faces personal harm, and the Bank, which values his ongoing participation on the board, asserts that it faces harm as well.  By contrast, the FDIC does not allege any significant harm that would occur were a stay to issue.  The balance of hardships weighs in favor of issuing a stay.

Finally, we are not persuaded that the public interest would be adversely affected by a stay pending a decision on the merits.  Burgess points to the supportive statements of Bank-affiliated witnesses and affiants asserting that his continued participation on the board would benefit the Bank and its clients.  The FDIC counters that the misconduct findings at issue in this enforcement action show "that it would not be in the public interest to allow [Burgess] to" remain on the board.  We do not find this argument persuasive because it is undercut by other facts in the record and because the constitutionality of the structure of the fact-finding procedure on which the FDIC relies lies at the heart of this motion.  The public interest therefore does not weigh against a stay.

\*     \*     \*

Because Burgess has established a likelihood of success on the merits of his Appointments Clause challenge, that irreparable harm would result absent

---

[58] *Id.* at 1056.

a stay, and that both the balance of hardships and the public interest favor a stay, his motion for a stay is GRANTED.